**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

CHRISTOPHER YOUNG,

*Defendant*.

Criminal Action No. 25-50 (SLS)
Judge Sparkle L. Sooknanan

**MEMORANDUM OPINION**

This case presents a scenario that has become far too common across our country. After sharing a link with an undercover officer containing 1,616 videos depicting sexual abuse of minors, Christopher Young pleaded guilty to distribution of child pornography. Under 18 U.S.C. § 2259, the Court must order Mr. Young to pay restitution to each of his victims to compensate them for the harms caused by their abuse and exploitation. But the record supporting restitution in this case is shockingly thin. The Court has received restitution requests from only ten victims, as well as victim impact statements from them and a couple others. And at the time of the initial sentencing hearing, the Parties said next to nothing how much restitution the Court should impose.

After pressing the Parties about restitution, it became clear that no one in this case represented the interests of the potentially hundreds of victims depicted in the files distributed by Mr. Young who did not submit restitution requests. Rather, both the Government and Mr. Young took the position that those victims are not entitled to restitution. To discharge its duties under Section 2259, the Court appointed an *amicus* to argue on behalf of those absent victims.[1] Now,

[1] The Court appointed Amy Saharia of Washington, D.C. as *amicus*. At the sentencing hearing discussing these issues, Kaitlin Wetz presented arguments for the *amicus*. Both attorneys have more than ably discharged their duties, for which the Court is grateful.

with the benefit of full briefing and argument, the Court agrees with the Parties that Section 2259 does not authorize restitution for victims—such as the absent victims in this case—about whose losses the Court knows nothing. Section 2259 contemplates that courts will award restitution only after determining the full amount of a victim's losses. And of course, that determination is impossible without submissions about losses.

That said, the Court is troubled by this result. The statutory provisions governing restitution envision that the Government and probation officers will play a significant role in developing the record supporting a court's restitution order. In every case, the Government bears the burden of establishing the losses sustained by victims. And the probation officer must provide to courts a complete accounting of the losses of each victim. Congress established this statutory scheme to ensure that victims of child pornography, quite understandably, would not be required to participate in sentencing proceedings to obtain restitution awards. Yet here, the Government did nothing more than forward the restitution requests that a handful of victims chose to submit. The result? Only victims who have the wherewithal and resources to prepare and submit restitution requests have any chance of receiving restitution. And this dynamic, the Court is told, is entirely typical of cases like this. According to the Government, what happened in this case is consistent with how United States Attorney's Offices across the country approach similar cases. This Court is of the view that prosecutorial practice cannot override statutory commands. Congress expected more of the Government when it decided how to address the devastating harms caused by child pornography. Whether that expectation is reasonable is not for this Court to decide.

As for Mr. Young, the Court must award restitution to the victims who have submitted requests. The Court orders restitution in the amounts detailed below.

## BACKGROUND

### A. Statutory Background

Congress enacted 18 U.S.C. § 2259 as part of the Violence Against Women Act of 1994, recognizing the need to provide restitution to victims of child pornography. *Paroline v. United States*, 572 U.S. 434, 439 (2014). Facing the "serious national problem" of "the exploitive use of children in the production of pornography," *id.* (quoting *New York v. Ferber*, 458 U.S. 747, 749 (1982)), Congress provided that district courts "shall order restitution" "in addition to any other civil or criminal penalty authorized by law" when sentencing a defendant for a crime under Chapter 110 of Title 18, Sexual Exploitation and Other Abuse of Children. 18 U.S.C. § 2259(a). In general, the restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." *Id.* § 2259(b)(1).

The Supreme Court interpreted that provision in *Paroline v. United States*. After concluding that Section 2259 contemplates restitution "only to the extent the defendant's offense proximately caused a victim's losses," the Court went on to discuss "how to apply the statute's causation requirements" to the "somewhat atypical causal process" resulting from a defendant who admitted to possessing child pornography. *Id.* at 448–49. The Court explained that "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458.

Congress codified the *Paroline* interpretation in the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115–299, 132 Stat. 4383. As an

exception to the general rule of restitution in "the full amount of the victim's losses," Congress prescribed that when a defendant is "convicted of trafficking in child pornography, the court shall order restitution . . . in an amount to be determined . . . as follows:"

> (A) Determining the full amount of a victim's losses.—
> The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>
> (B) Determining a restitution amount.—
> After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.
>
> (C) Termination of payment.—
> A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

18 U.S.C. § 2259(b)(1)–(2). "The issuance of a restitution order under [Section 2259] is mandatory." *Id.* § 2259(b)(4)(A).

A Section 2259 restitution order is "issued and enforced in accordance with section 3664." *Id.* § 2259(b)(3). That section assigns the Government and the probation officer significant responsibilities. To fashion a restitution order, the "court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion." *Id.* § 3664(a). The probation officer's report "shall include, to the extent practicable," information including "a complete accounting of the losses to each victim." *Id.* "If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." *Id.* "Upon the request of the probation officer, . . . the attorney for the

Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution." *Id.* § 3664(d)(1). And "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses." *Id.* § 3664(d)(5).

"The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id.* § 3664(e). "No victim shall be required to participate in any phase of a restitution order." *Id.* § 3664(g). Importantly, Congress directed that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.*

**B. Factual & Procedural Background**

The Court draws the facts from the Statement of Offense, to which Mr. Young agreed when he pleaded guilty. Statement of Offense, ECF No. 20.

In October 2024, Mr. Young struck up a conversation with an undercover police officer on the mobile messaging application Telegram. *Id.* at 2–3. He told the officer about his sexual interests, which included children. *Id.* at 3. Eventually, he sent the officer a link to a data storage website that contained 1,616 videos of children, including infants, engaging in sexual conduct with adults. *Id.* After Mr. Young was arrested, his phone contained two videos and three images depicting child pornography. *Id.* at 5.

In May 2025, pursuant to a plea agreement, Mr. Young pleaded guilty to Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1). *See* Min. Entry (May 27, 2025); Plea Agreement, ECF No. 19. In the plea agreement, Mr. Young agreed that "the Court has

an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. § 3663A and 18 U.S.C. § 2259 at the time of sentencing." Plea Agreement at 8.

The Parties each filed memoranda in advance of sentencing. *See* Def. Sentencing Mem., ECF No. 37; Gov't Sentencing Mem., ECF No. 30. Although those memoranda extensively discussed Mr. Young's potential term of incarceration, they said much less about restitution. In its memorandum, the Government discussed generally the framework for restitution under Section 2259. Gov't Sentencing Mem. 13–15 It then stated:

> Exhibit A contains the Victim Impact Statements received from children depicted in the materials possessed and traded by the defendant. Exhibits B through K contain restitution requests made [by] the victims. As detailed in the victim impact statements and requests for restitution, these victims are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, and for various medical expenses incurred as a result of the defendant's actions.

*Id.* at 15–16. Mr. Young's memorandum said nothing about restitution. *See generally* Def. Sentencing Mem.

The Government submitted the victim impact statements and restitution requests to the Court under seal. *See* ECF No. 34. It filed statements from twelve child-pornography victims and/or members of their family. The statements described harrowing abuse and its lasting impacts on the victims, who suffer knowing that videos depicting that abuse are endlessly reproduced and re-distributed. The Government filed ten restitution requests from a largely—but not entirely—overlapping set of victims.[2] These requests included, in various degrees of detail, information about the losses claimed by the victims—the highest (exclusive of attorney fees) was the victim pseudonymously identified as Tara ($7,796,971.80) and the lowest was the victim identified as

[2] The Court received one restitution request from a victim who did not submit an impact statement, and it received three impact statements from victims who did not submit a restitution request.

Raven ($35,000). Many of the requests attached voluminous documentation in support of the claimed loss amount. And they asked this Court to impose between $3,000 and $10,000 in restitution.

The Court held the first sentencing hearing in this case on March 17, 2026. Min. Entry (Mar. 17, 2026). At that hearing, the Court expressed concerns about the record regarding restitution. It noted that the Government's sentencing memorandum—specifically, its statement that "Exhibit A contains the Victim Impact Statements received from children depicted in the materials possessed and traded by the defendant," Gov't Sentencing Mem. 15—appeared to be the only thing in the record identifying the victims depicted in the videos distributed by Mr. Young. And among other questions, the Court asked how it was meant to determine restitution for victims who did not submit restitution requests. In response, the Government represented that the Court need not enter restitution for any victim who did not submit such a request.

Given these questions, the Court continued the sentencing hearing and directed the Parties to file supplemental memoranda on restitution. *See* Min. Entry (Mar. 17, 2026); Min. Order (Mar. 17, 2026). It directed the Government to include in its memorandum "a list of *all* the victims depicted in the videos sent by the Defendant, not just the ones whose identities ha[d] been determined or who ha[d] submitted requests for restitution." Min. Order (Mar. 17, 2026).

The Government's supplemental memorandum expanded on its view regarding restitution for victims who did not submit restitution requests. Gov't's Suppl. 3–4, ECF No. 48; *see* ECF No. 41-1 (unredacted version). It represented that the National Center for Missing and Exploited Children identified 250 videos in this case as known videos, which were part of 142 known series. Gov't's Suppl. 2. And it specified the identified victims in these series. *Id.* at 3; ECF No. 41-1

at 15–17. The Government did not list the victims (by pseudonym or otherwise) who had not been identified, nor did it provide the number of such victims depicted in the videos.

The Court held a further sentencing hearing on March 31, 2026. *See* Min. Entry (Mar. 31, 2026). It sentenced Mr. Young to seventy-eight months of incarceration followed by 120 months of supervised release as well as a $100 special assessment. *Id.* But with the Parties' consent, it deferred ordering restitution. The Court continued to have concerns about the record supporting restitution as well as the Parties' arguments. In particular, the Court observed that no Party seemed to represent the interests of victims who had not filed restitution requests. Accordingly, and again with the Parties' consent, the Court appointed an *amicus* to present arguments in support of restitution payments for Mr. Young's victims. Order, ECF No. 50. The Court directed the Parties, including the *amicus*, to address "(1) whether 18 U.S.C. § 2259 requires the Court to order restitution only in favor of identified victims who have submitted restitution requests, or whether the Court must also order restitution in favor of (a) victims whose identities have yet to be determined and/or (b) victims whose identities have been determined but who have not submitted restitution requests . . . ; and (2) whether a defendant reaching an agreement with a victim about a proper amount of restitution obviates the need for a court to independently determine and order an appropriate amount of restitution under 18 U.S.C. § 2259(b)." Order at 1–2.

The Court received briefs on these issues from the Parties and the *amicus*. Gov't Br., ECF No. 62; Def. Br., ECF No. 63; Amicus Br., ECF No. 65; Gov't Reply, ECF No. 76; Def. Reply, ECF No. 77. The Court also received a memorandum from Probation and an *amicus* brief on behalf of Mr. Young by the National Association of Criminal Defense Lawyers. *See* Probation Mem., ECF No. 59; NACDL Br., ECF No. 72.

On June 5, 2026, the Court held a further sentencing hearing at which it heard arguments concerning the Parties' interpretation of Section 2259. Min. Entry (June 5, 2026). At that hearing, the Court noted that although Mr. Young had made a constitutional-avoidance argument based on the Sixth Amendment in support of his interpretation of Section 2259, he appeared to be arguing in substance that awarding any restitution under that provision would violate the Sixth Amendment. *See* Hr'g Tr. 8:3–23, ECF No. 81. After the hearing, Mr. Young filed a Supplemental Memorandum, which clarified that he was in fact challenging the constitutionality of any restitution award on Sixth Amendment grounds. Def. Suppl. Mem., ECF No. 82. The Government filed a memorandum which responded to this constitutional argument, Gov't Suppl. Mem., ECF No. 83. But Mr. Young later withdrew his constitutional arguments. *See* Def. Notice at 1 (July 22, 2026), ECF No. 85.[3]

## DISCUSSION

This case raises several issues regarding the mandatory restitution award under 18 U.S.C. § 2259. Recall that "[t]he issuance of a restitution order under [Section 2259] is mandatory"; a court must order restitution "in addition to any other civil or criminal penalty authorized by law." 18 U.S.C. § 2259(a), (b)(4)(A). Subsection 2259(b), in turn, says that the restitution order must

[3] Mr. Young argued, among other things, that "relying on judicial fact-finding alone to trigger § 2259(b)(2)(B)'s mandatory minimum restitution violates the Sixth Amendment." Def. Suppl. Mem. 4, ECF No. 82. Citing the dissent from denial of certiorari in *Hester v. United States*, 586 U.S. 1104 (2019), he reasoned that "[w]here a defendant has not admitted to facts that would allow for mandatory minimum restitution, as here, 'a court can't award *any* restitution without finding additional facts about the victim's loss.'" Def. Suppl. Mem. 4 (quoting *Hester*, 586 U.S. at 1107 (Gorsuch & Sotomayor, JJ., dissenting from denial of certiorari)). At first glance, this argument appears to have merit. *But see* Gov't Suppl. Mem. 2 (noting that several circuits have rejected the argument), ECF No. 83. But to evaluate it, the Court would have to assess, among other things, whether *Ellingburg v. United States*, 607 U.S. 163 (2026), applies to the Sixth Amendment jury-trial right, whether Congress intended restitution under Section 2559 to be punishment, and whether judicial factfinding for restitution is consistent with the historical role of the jury at the Founding.

require the defendant to pay "the victim." *Id.* § 2259(b)(1), (2)(A)–(B). And "the term 'victim' means the individual harmed as a result of a commission of a crime under" Chapter 110 of Title 18 (Sexual Exploitation and Other Abuse of Children). *Id.* § 2259(c)(4). But what must a court do when a defendant's conduct harms a very large number of victims?[4]

Take this case, for example. Mr. Young sent an undercover officer a link to a data storage website that contained 1,616 videos of children engaging in sexual conduct with adults. Statement of Offense at 3. The Government has identified 46 victims depicted in 250 of the 1,616 videos, Gov't's Suppl. 2; ECF No. 41-1 at 15–17, and the total number of victims likely number in the hundreds. Because Mr. Young harmed each of them by redistributing videos of their horrific abuse, Section 2259 considers all of them his victims. *See* 18 U.S.C. § 2259(c)(4); *Paroline*, 572 U.S. at 457 ("In a sense, every viewing of child pornography is a repetition of the victim's abuse.").[5]

Yet the record includes information about very few of them. The Government submitted restitution requests from only ten victims, and it provided victim impact statements from an additional three. The Court received nothing from the Government, Probation, or anyone else about the other 33 known victims—let alone the many other victims who have yet to be identified. For which of these victims does Section 2259 require the Court to order restitution? That is the question that the Court set out to answer.

---

[4] The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, states that "[t]his section shall not apply . . . if the court finds, from facts on the record, that . . . the number of identifiable victims is so large as to make restitution impracticable." 18 U.S.C. § 3663A(c)(3)(A). Although that readily describes this case, Section 2259 does not contain a similar provision.

[5] Still, after several rounds of briefing, the Government has not stated the total number of victims—known and unknown—depicted in the 1,616 videos that Mr. Young distributed.

### A. Interpreting 18 U.S.C. § 2259

The Government and the Defendant argue that the only victims in this case who might be entitled to restitution under Section 2259 are those who submitted restitution requests. They contend that Section 2259(b)(2) contemplates a step-by-step process for awarding restitution orders. *See* Gov't Br. 5; Def. Br. 3; *see also* NACDL Br. 3–4. And only the victims who submitted restitution requests, they say, have a chance of passing each step. *See* Gov't Br. 6–7; Def. Br. 3.

To assess that contention, the Court starts with the text of Section 2259(b)(2). When, as here, a defendant is "convicted of trafficking in child pornography," Section 2259(b)(2) says that the court "shall order restitution . . . in an amount to be determined by the court as follows." 18 U.S.C. § 2259(b)(2). It then sets forth three subparagraphs: (A), (B), and (C). Subparagraph (A), which is captioned "Determining the full amount of a victim's losses," directs the sentencing court to:

> determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result in the trafficking in child pornography depicting the victim.

18 U.S.C. § 2259(b)(2)(A); *see also* 132 Stat. at 4384 (reflecting that Section 2259(b)(2)'s captions were passed by Congress). Next, subparagraph (B), which is captioned "Determining a restitution amount," provides:

> After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.

*Id.* § 2259(b)(2)(B). Finally, subparagraph (C), which is captioned "Termination of payment," instructs the court to "terminate[]" the "liability" of a "defendant who is or has been ordered to pay restitution" to a victim who has "received restitution in the full amount of the victim's losses." *Id.* § 2259(b)(2)(C).

The text and structure of this provision reflect that Congress intended courts to undertake a "three-step process" with respect to each victim potentially entitled to restitution. *See United States v. Hoffman*, No. 22-cr-18, 2022 WL 4017890, at *2 (W.D. Wash. Sep. 2, 2022). Start with the text of the subparagraphs. Subparagraph (B) says that a court "shall order restitution" for a particular victim "[*a*]*fter* completing the determination required under subparagraph (A)." 18 U.S.C. § 2259(b)(2)(B) (emphasis added). That is a clear instruction about sequencing: first comes "[d]etermining the full amount of a victim's losses" and then comes "[d]etermining a restitution amount." *Id.* § 2259(b)(2)(A)-(B). And although subparagraph (C) lacks a similar explicit textual coupling, it is clearly meant to come last. It presumes that a defendant has restitution liability pursuant to Section 2259, which a court can only impose via subparagraph (B). Zooming out, the structure of Section 2259(b)(2) confirms that Congress directed a three-part sequence. The provision begins by directing restitution "in an amount to be determined by the court as follows"—and what follows is three individually captioned subparagraphs. *Id.* § 2259(b)(2). In other words, Congress prescribed a process with three steps: to determine the amount to award a victim in restitution, start with (A), go to (B), and then end with (C).

This three-step process explains why Section 2259 does not permit restitution awards for many victims—both identified and unidentified—in this case. Besides the handful of victims who submitted impact statements or restitution requests, the record contains virtually no information about Mr. Young's victims and certainly no evidence about the losses they suffered. The Court therefore lacks any basis to "determine the full amount of th[ose] victim[s'] losses" under subparagraph (A). *Id.* § 2259(b)(2)(A). Because subparagraph (B) directs a court to determine a restitution amount only "[a]fter completing the determination *required* under subparagraph (A),"

the inability to complete the subparagraph (A) determination for these victims cuts this Court off from awarding them restitution. *Id.* § 2259(b)(2)(B) (emphasis added).

The court-appointed *amicus* urges a different interpretation of Section 2259. Observing that Section 2259 makes restitution mandatory and that subparagraph (B) compels an amount of restitution "no less than $3,000," the *amicus* contends that this Court must order at least $3,000 for each victim regardless of whether they participated in this proceeding. Amicus Br. 4–5 (citing 18 U.S.C. § 2259(b)(2)(B), (4)(A)).

In support of this interpretation, the *amicus* cites *United States v. Byrd*, 569 F. Supp. 3d 621 (W.D. Ky. 2021), the only analysis of the issue of nonparticipating victims of which this Court is aware. Amicus Br. 5. In *Byrd*, the defendant pleaded guilty to child-pornography crimes after recording his abuse of a minor victim and distributing the video on social media. 569 F. Supp. 3d at 622, 624. Neither the Government nor the victim asked the court to order restitution. *Id.* at 622. The court explained that "[n]ormally, the calculation of restitution follows a two-step process": first the court determines the full amount of the victim's losses under subparagraph (A), and then the court orders restitution under subparagraph (B). *Id.* at 623–24. But because the Government did not submit any evidence, "[h]ow [could the] court . . . calculate the losses incurred by an absent victim?" *Id.* at 624. There, the Government advanced the same argument it makes here, that "determining the loss [was] futile—and without a loss amount, the court [could not] ascribe any portion of that amount to the defendant." *Id.*

The *Byrd* court rejected this argument. It observed that 18 U.S.C. § 3664(g)(1)—incorporated by reference into Section 2259, *see* 18 U.S.C. § 2559(b)(3)—states that "[n]o victim shall be required to participate in any phase of a restitution order." *Byrd*, 569 F. Supp. 3d at 624. And subparagraph (B) directs a restitution award not less than $3,000. *Id.* Putting these provisions

together, the *Byrd* court concluded that "[w]hen neither victim nor prosecutor provides support for a particular loss amount, the statute provides a backstop. It presumes a floor of $3,000 in harm." *Id.* This reading, the court reasoned, "reconciles the court's mandatory duty to impose a restitution order, . . . the victim's discretionary right not to participate, . . . and the defendant's entitlement to a reasoned basis for the loss amount." *Id.* at 625 (citation omitted).

Although there is much to commend about *Byrd*'s thoughtful discussion, this Court ultimately disagrees that it can award restitution when it lacks a basis to determine the full amount of a victim's loss. As explained above, Section 2259 is not structured to impose a $3,000 mandatory minimum in every case with the possibility of a higher award based on greater proven losses. Instead, it prescribes a step-by-step process according to which a court must first "answer the threshold question of the victim's total loss amount" under subparagraph (A). *United States v. Schlipf*, No. 22-cr-37, 2023 WL 5938087, at *5 (W.D. Ky. Sep. 12, 2023). The court's inability to answer that question "prevents the [c]ourt from turning to the statutory default amount." *Id.*

Still, the Court agrees with the *amicus* and *Byrd* insofar as they explain that restitution does not hinge on victim participation, through a restitution request or otherwise. Congress expressly provided that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). So although determining the full amount of a victim's loss under subparagraph (A) is a necessary threshold for ordering a nonzero amount of restitution, Section 2259 does not require proof of loss by any particular type of evidence. While restitution requests from victims appear to be the most common submission supporting such a determination (more on this below), the Government might carry its "burden of demonstrating the amount of the loss sustained by a victim" by, for example, conducting its own investigation into a victim's loss or submitting expert testimony about losses typically suffered by child-pornography victims. *See*

18 U.S.C. § 3664(e). Nevertheless, "the Government still must supply 'some evidence by which to measure [the victim's] financial loss.'" *Schlipf*, 2023 WL 5938087, at *5 (quoting *United States v. Dagostino*, 520 Fed. App'x 90, 92 (3d Cir. 2013)).

The *amicus* next argues that even if a subparagraph (A) determination is a necessary threshold to awarding a nonzero amount of restitution under subparagraph (B), the $3,000 mandatory minimum "satisfies both steps of the statutory framework" because it "embodies Congress's own finding as to the minimum 'full amount' of losses under (A), and simultaneously fixes the minimum restitution the court 'shall order' under (B)." Amicus Br. 7. This argument has force. Despite the Government's suggestion to the contrary, it seems highly unlikely that any child-pornography victim incurs less than $3,000 in loss because of the creation and trafficking in depictions of their abuse. *See* Hr'g Tr 49:8–9 ("[THE GOVERNMENT]: "I think it's possible that there is a victim out there that hasn't incurred $3,000 of loss[.]"). And subparagraph (B)'s directive to award restitution that is "no less than $3,000" unambiguously sets a statutory minimum award amount.

The problem is that this reading paves over several of Section 2259(b)(2)'s features. The subparagraph (A) determination is of "the *full* amount of the victim's losses." 18 U.S.C. § 2259(b)(2)(A) (emphasis added), (c)(2) (explaining that the "'full amount of the victim's losses' includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim"). The ordinary meaning of "full" is "complete especially in detail, number, or duration." *Full*, Merriam-Webster, https://www.merriam-webster.com/dictionary/full (last visited August 12, 2026). Congress' directive that courts determine the complete amount of a victim's losses hardly seems to be an invitation to presume a certain minimum loss amount. Further, Congress placed the $3,000 minimum in subparagraph (B), not (A). That is, it made the $3,000 minimum part of

determining "the defendant's relative role in the causal process that underlies the victim's losses," not part of the antecedent determination about the full amount of those losses. 18 U.S.C. § 2259(b)(2)(B). As written, then, Section 2259(b)(2) does not support that Congress intended courts to double-count $3,000 as both a victim's presumptive losses and the amount representing a defendant's role in causing those losses.

Although not addressed in the briefing, one of the victim's restitution requests relies on 18 U.S.C. § 2255 to make a similar argument. ECF No. 34-10 at 8. Section 2255, which is titled "Civil Remedy for Personal Injuries," permits a victim of certain child-sex offenses to sue to "recover the actual damages such person sustains or liquidated damages in the amount of $150,000, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255(a).[6] That provision, the argument goes, reflects a legislative determination that these victims (including victims of distribution of child pornography) suffered at least $150,000 in loss. *See* ECF No. 34-10 at 8. "But the damages available to a plaintiff in a civil lawsuit may be quite different from the concrete 'costs incurred' for which § 2259 provides recompense. For example, a plaintiff in a civil damages suit under § 2255(a) may be able to recover for noneconomic losses, such as pain and suffering or mental and emotional distress, that are not available in a restitution proceeding under § 2259." *United States v. Rothenberg*, 923 F.3d 1309, 1339 (11th Cir. 2019) (citation omitted). So this provision does not provide a basis to tick the subparagraph (A) checkbox.

---

[6] Prior to 2018, the provision said that any such victim "shall be deemed to have sustained damages of no less than $50,000 in value." *Compare* Child Abuse Victims' Rights Act of 1986, Pub. L. No. 99–591, § 703, 100 Stat. 3341–74, 3341–75, *with* Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No. 115–126, § 102, 132 Stat. 318, 319.

In sum, with the benefit of fulsome briefing and argument, the Court now agrees with the Parties that Section 2259(b)(2) makes a determination about the full amount of the victim's losses a prerequisite for awarding restitution. The Court's inability to make that determination with respect to a victim means that it cannot proceed to order restitution for that victim.

### B. The Role of the Government and the Probation Officer

Stepping back, this interpretation of Section 2259(b)(2) does not mean that the restitution record in this case is consonant with the statutory scheme. That scheme places considerable responsibility on the Government and the probation officer. And the Court is troubled that neither has adequately discharged their statutory obligations.

Start with the probation officer's role. The "probation officer" is to "obtain and include" in a report "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). The report "shall include, to the extent practicable, a complete accounting of the losses to each victim," among other things. *Id.* "If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." *Id.* The probation officer is also to ask the Government—who in turn shall consult with "all identified victims"—for "a listing of the amounts subject to restitution" in advance of the initial sentencing hearing. *Id.* § 3664(d)(1).

Next, the statutory scheme places on the Government "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). That means that the Government sits in the driver's seat with respect to securing restitution for victims. And if a victim's losses "are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court." *Id.* § 3664(d)(5).

The sentencing court, in turn, is to "set a date for the final determination of the victim's losses." *Id.*

That is not what happened in this case. On restitution, the presentence report said only that "[r]estitution requests collected by the government will be provided to the Court and the parties by the government under separate cover." Presentence Investigation Report ¶ 114, ECF No. 26. As described above, when advocating for restitution, the Government similarly did nothing more than refer the Court to the restitution requests. Gov't Sentencing Mem. 15–16. And until the Court pressed the Parties on restitution, neither Probation nor the Government informed the Court that the losses for many victims were, in their view, "not ascertainable." 18 U.S.C. § 3664(d)(5). Yet the Government has insisted throughout this proceeding that this is how restitution in cases like this is usually done. *See, e.g.*, Gov't Br. at 9 n.2 (explaining that the Government "reached out to other districts to determine how restitution is handled across the country" and determined that its approach in this case was consistent with standard practice in nine other districts). In other words, the Government and Probation—consistent with widespread practice—did no more than transmit papers from the victims to the Court.

Nor is this Court blameless. Probation's obligation to obtain "information sufficient for the court to exercise its discretion in fashioning a restitution order" is triggered by a court's order. 18 U.S.C. § 3664(a). The Court regrets that it did not issue that order in this case—having taken for granted that the various actors would fulfill their statutory obligations.

In the end, it appears that the reality of Section 2259 restitution in cases like this one has diverged from its statutory mooring. When a defendant is convicted of trafficking many files depicting many different victims, the Government readily admits that it simply "provides to the Court what [it] receive[s] from victims." Hr'g Tr. 57:5–7. Neither the Government nor the

probation officer take any steps to affirmatively develop the record to facilitate restitution awards. Thus, any victim who does not submit a request for restitution is out of luck. In effect, and contrary to the statute, a victim is "required to participate" in a proceeding such as this one to have any chance of obtaining restitution. 18 U.S.C. § 3664(g)(1).

The Government objects that the "reality of these cases" makes it very difficult or impossible for it to do otherwise. Hr'g Tr. 59:3–5. And indeed, Section 2259 appears to give the Government, probation officers, and courts "impossible task[s]." *Hoffman*, 2022 WL 4017890, at *7. The Government and probation officers are tasked with identifying far-flung victims, collecting information about their losses, and providing courts with a sufficient basis to quantify those losses. *See* 18 U.S.C. § 3664(a), (d)(5).[7] Courts are then tasked with assessing what amount of money "reflects [a] defendant's relative role in the causal process that underlies the victim's losses," *id.* § 2259(b)(2)(B)—"a demand for the impossible." *Paroline*, 572 U.S. at 468 (Roberts, C.J., dissenting). This is "a scheme that at least approaches the limits of fair adjudication." *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). And although the 2018 amendment imposing a $3,000 minimum award may have provided "a slight helping hand" from Congress, *Hoffman*, 2022 WL 4017890, at *7, the scheme remains one that "cries out for a congressional solution," *Galan*, 804 F.3d at 1291. Until that happens, "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake." *Paroline*, 572 U.S.

[7] To be sure, Section 3664 appears to recognize that it will sometimes be impossible for the probation officer or the Government to obtain information about victims and their losses. The probation officer's report should include "a complete accounting of losses to each victim" "to the extent practicable." 18 U.S.C. § 3664(a). And if the "number or identity of the victims cannot be reasonably ascertained, . . . the probation officer shall so inform the court." *Id.* What these provisions do not do, however, is suggest that the probation officer or the Government can presume the infeasibility of these determinations without comment, or that the entire restitution enterprise may be reduced to pointing to restitution requests submitted by victims.

at 462. The Court takes that directive seriously, and it expects the same from the Government—no matter how daunting the task may be.

**C. The Victims' Restitution Requests**

With all this in mind, what is left is to determine restitution in this case. For each of the victims below, the Court first "determine[s] the full amount of the victim's losses . . . as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). To make that determination, the Court relies on the victims' submitted restitution requests, as well as Mr. Young's agreement that the submissions accurately reflect the victims' total losses.

For each victim, the Court then determines the "amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." *Id.* § 2259(b)(2)(B). The Court bases the amounts below on the number of files distributed by Mr. Young and the amount of each victim's total losses.

*April*. The total amount of April's losses is $2,709,880.88. The Court will order $4,000 in restitution to April.

*Chelsea*. The total amount of Chelsea's losses is $3,301,070. The Court will order $4,000 in restitution to Chelsea.

*Cindy*. The total amount of Cindy's losses is $1,668,232.47. The Court will order $3,000 in restitution to Cindy.

*Jenny*. The total amount of Jenny's losses is $8,948,163.84. The Court will order $3,000 in restitution to Jenny. The Government previously represented that counsel for Jenny did not respond to the Government's request for information about the amount of restitution received by Jenny to date. Gov. Br. 13 & n.5. The Court will "require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses."

18 U.S.C. § 2259(b)(2)(C). The Government should inform counsel for Jenny of this Court's directive.

*Maria*. The total amount of Maria's losses is $3,778,744.16. The Court will order $7,500 in restitution to Maria.

*Raven*. The total amount of Raven's losses is $46,200. The Court will order $3,000 in restitution to Raven. As with Jenny, the Government represented that counsel for Raven did not respond to the Government's request for information about restitution received by Raven to date. Gov. Br. 13 & n.5. So the Court will require the victim to provide information about that amount, and the Government should inform counsel for Raven of this Court's directive. 18 U.S.C. § 2259(b)(2)(C).

*SparklingVelvet*. The total amount of SparklingVelvet's losses is $1,565,559.68. The Court will order $3,000 in restitution to SparklingVelvet.

*Tara*. The total amount of Tara's losses is $7,796,971.80. The Court will order $8,000 in restitution to Tara.

*Taylor*. The total amount of Taylor's losses is $20,000. The Court will order $3,000 in restitution to Taylor. However, the Government has represented to the Court that Taylor has received at least $116,432.44 in restitution to date. Gov. Br. 14. No Party has provided any information about "the greatest amount of . . . losses found in any case involving" Taylor "that has resulted in a final restitution order." *See* 18 U.S.C. § 2259(b)(2)(C). Accordingly, on the record

before it, the Court will "terminate[]" Mr. Young's "liability" as required by Section 2259(b)(2)(C).[8]

*Vicky*. The total amount of Vicky's losses is $6,108,423.21. The Court will order $7,500 in restitution to Vicky.

## CONCLUSION

A separate order will issue directing Mr. Young to pay restitution in the amounts specified above.

SPARKLE L. SOOKNANAN
United States District Judge

Date: August 17, 2026

[8] The Government's brief reports that counsel for Taylor "advised that she did not have a total loss amount but that one report estimated that psychological care would cost between $71,750 and $104,800, not including any medications." Gov. Br. 14 n.6, ECF No. 62. The Court notes that Mr. Young agreed only that the restitution requests accurately reflect the victims' losses. And even if the Court were to credit the assertions of counsel for Taylor without any supporting documentation, the record would still indicate that Taylor has received more in restitution than the total amount of her losses.